RULLÁN, DEMANDANTE Y APELANTE, *v.* VÁZQUEZ, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en pleito sobre nulidad de actuaciones en procedimiento especial hipotecario.

No. 2482.—Resuelto en julio 28, 1923.

NULIDAD DE PROCEDIMIENTO EJECUTIVO—EVIDENCIA; DECLARACIONES PARA BENEFICIO PROPIO—PRUEBA DE REFERENCIA.—No existe ningún principio de evidencia que excluya como tales "las declaraciones para beneficio propio." La cuestión relativa a tales manifestaciones es siempre si están o no comprendidas dentro de alguna de las bien reconocidas excepciones a la regla sobre prueba de referencia.

ID.—CONTRIBUCIONES SOBRE HIPOTECAS; *Bill Hollander.*—Las hipotecas sin intereses no estaban exentas del pago de contribuciones bajo la vigencia de la ley de enero 31, 1901, conocida por "bill Hollander."

ID.—CONFLICTO DE EVIDENCIA.—En el presente caso se apeló una sentencia que declaró sin lugar una demanda sobre nulidad de procedimiento ejecutivo hipotecario. *Se resolvió:* que la preponderancia de la evidencia, que se analiza en la opinión, estaba en favor del demandante por lo que, la referencia a un conflicto de poca importancia y al comportamiento de los testigos en la silla no es bastante para que se sostenga la sentencia apelada.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. J. D. Rodríguez y S. Suau.*

Abogados del apelado: *Sres. García Méndez & García Méndez.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Después de celebrado un juicio sobre los méritos, la corte inferior declaró sin lugar la demanda de este caso sobre nulidad de actuaciones de procedimiento hipotecario y cancelación del mismo por las razones que · se pasan a consignar:

"El demandante Raimundo Rullán, en este caso alega: 1.—Que es dueño de una finca rústica de 25 cuerdas, en el barrio Río Prieto de Lares, valorada en 1,800 dólares, y·cuya finca la hubo por compra en subasta pública judicial, inscrita en el Régistro de la Propiedad; 2.—Que el demandado Justiniano Vázquez, ha entablado demanda en contra del demandante, en cobro de dinero, por el procedimiento especial hipotecario, de cinco plazos de una hipoteca, constituída sobre la finca de que se trata por Agustín Planell y Ruiz, por la suma de 2,200 pesos moneda corriente en el año 1887, cuya cantidad tenía que satisfacer el señor ·Planell en la siguiente forma: a José Justiniano, 750· pesos, a razón de 150 pesos en enero de cada uno de los años 1888 a 1892, ambos inclusives, y a Francisco Serra Castañer, 1,450 pesos en igual fecha de los años subsiguientes del 1893 a 1901, ambos inclusives, alegando el demandado en dicho procedimiento que los pagos o plazos que vencieron en enero de los · años 1888 a 1892 no le han sido satisfechos; 3.—Que con fecha 17 de abril, 1918, se dictó una orden por esta corte decretando el requerimiento al demandado, aquí demandante, ·que se le notificó el día 24 del mismo mes y año; 4.—Que los plazos requeridos por José Justiniano Vázquez, tienen más de 30, 29, 28, 27 y 26 años de vencidos, sin haberse hecho gestiones de cobro, por lo que la acción hipotecaria está prescrita; 5.—Que José Justiniano Vázquez cobró, y Agustín Planell y Ruiz satisfizo, los plazos ahora reclamados, el primero, por medio de Federico Aymat, suscribiendo un recibo que se copia en la demanda, y que lleva fecha de 7 de febrero, 1888; que en 1889 y en 1890, Agustín Planell pagó el importe de los plazos de dichos años a José Justiniano Vázquez y en 1891 el importe de dicho plazo y el del año siguiente por adelantado, cuyas sumas recibió en casa de Juan Alimañy y Co., otorgando los correspondientes recibos, los que fueron destruídos o desaparecidos en un

asalto verificado por una partida incendiaria en la casa de Agustín
Planell en el año 1898; y que los plazos sucesivos que debía satis-
facer a Francisco Serra los pagó por adelantado en el año 1894.
Y termina con la súplica de que se dicte sentencia por la que se de-
clare nulo el procedimiento hipotecario; que se cancele el crédito
hipotecario reclamado; y que se condene en costas, gastos y hono-
rarios de abogado al demandado.

"El demandado contestó la demanda, admitiendo los hechos que
bajo los números 1, 2 y 3 se relacionan anteriormente; admitiendo
del No. 4 que los plazos reclamados tienen más de 30, 29, 28, 27 y 26
años de vencidos, pero negando los demás extremos del mismo; ne-
gando asimismo el hecho 5. Y como materia nueva, alega el deman-
dado: Que los plazos reclamados no han prescrito; que no han
sido satisfechos en forma alguna; que el crédito no ha sido cedido
y está vigente, no habiéndose cancelado, ni hallándose pendiente de
cancelación según los libros del Registro de la Propiedad; que por
escritura otorgada en 1887, Agustín Planell y Ruiz adquirió de José
Justiniano Vázquez y su esposa, la finca de que se trata y el pago de
dicha venta se convino en hacerse a plazos en cada uno de los años
de 1888 a 1901, ambos inclusives; que venciendo el último plazo
en 1901, la acción no está prescrita, puesto que en la escritura no
se determinó que el vencimiento de cada plazo, o de un número de
ellos, constituía el vencimiento de la hipoteca, por lo que el deman-
dado no estuvo en condiciones de ejercitar su derecho hasta el
1901 en que venció el último plazo; y que el demandado ha hecho
distintas gestiones para cobrar los plazos reclamados en la acción
hipotecaria, sin haberlo conseguido. Y termina con la súplica de
que se dicte sentencia declarando sin lugar la demanda, con las
costas, gastos y honorarios de abogado al demandante.

"Dos son las cuestiones a resolver en este caso: 1.—Si el crédito
ha sido satisfecho, y 2.—Si la acción ha prescrito.

"De la prueba documental presentada aparece, que por escri-
tura pública otorgada en diez y seis de abril, 1887, por ante el no-
tario Víctor Martínez, José Justiniano Vázquez, aquí demandado,
y su esposa María Decideria Justiniano y Olán, vendieron a Agus-
tín Planell Ruiz, una finca rústica de 25 cuerdas, que es la misma
a que se refiere la demanda, radicada en el barrio Prieto, de Lares,
por la suma de 2,200 pesos moneda corriente en aquella fecha, para
ser satisfecha dicha suma en los plazos y a las personas siguientes:
al vendedor José Justiniano, 750 pesos a pagar a razón de 150 pesos
en los meses de enero de cada uno de los años de 1888 al 1892,

ambos inclusives, y a Francisco Serra Castañer, 1,450 pesos, a quien
se los pagará por cuenta del vendedor, a razón 181 pesos 25 centa-
vos en los meses de enero de cada uno de los años 1893 al 1901,
ambos inclusives, y a la responsabilidad de dichas cantidades, quedó
hipotecado el inmueble vendido, conviniéndose que con este grava-
men permanecerá ínterin no sea legal y debidamente cancelado; que
el comprador debía percibir por cada pago parcial que hiciese un
recibo privado hasta verificar el último a cada partícipe, en que le
será otorgada la correspondiente carta de pago y cancelación; que
las hipotecas a favor de José Justiniano Vázquez y Francisco Serra
Castañer, fueron inscritas en el Registro de la Propiedad de Agua-
dilla, con fecha 6 de agosto, 1887; que según escritura pública, otor-
gada en 25 de agosto de 1894, por ante el Notario Víctor Martínez,
dicho Francisco Serra Castañer dió carta de pago a Agustín Planell
y Ruiz por la referida suma de 1,450 pesos que fué presentada en el
Registro de la Propiedad, expresando el Liquidador con fecha 12
de septiembre, 1894, que figuraría en el libro de liquidaciones al
número 110 correlativo; que Agustín Planell Ruiz por escritura pú-
blica otorgada ante el Notario Salvador Picornell, el día 28 de mayo
de 1900, hipotecó a favor de G. Bernart y Compañía y de Pablo Vi-
dal y Roselló, la referida finca, por la suma de 1,614 pesos 43 cen-
tavos, moneda provincial, en la proporción que en dicha escritura se
expresa, habiéndose hecho constar por el deudor hipotecario que la
finca 'no reporta carga, ni gravamen alguno a la fecha, según así
consta de la escritura de carta de pago otorgada por Francisco Se-
rra Castañer a favor del compareciente Agustín Planell y Ruiz, au-
torizada ante el notario Víctor Martínez en este pueblo a veinte y
cinco de agosto de mil ochocientos noventa y cuatro el cual figura
en el libro de liquidación del Registro del Partido con el número
ciento diez correlativo, y el señor Planell y Ruiz protesta y asegura
no haber impuesto posteriormente sobre la finca descrita carga ni
gravamen alguno;' y que en 30 de julio, 1915, y por escritura otor-
gada ante el notario José D. Rodríguez, el Márshal de la Corte de
Distrito de Aguadilla vendió en pública subasta a Raimundo Ru-
llán y Pons, el demandante, la finca rústica a que se refiere esta
acción, por virtud de un procedimiento de ejecución de hipoteca
establecido por el propio demandante contra la Sucesión de Agus-
tín Planell y Ruiz, cuya venta fué inscrita en el registro de la pro-
piedad.

"El demandante presentó asimismo como prueba, un recibo, cuyo
documento lee como sigue: 'Recibido de don Agustín Planell la

suma de ciento cincuenta pesos que me ha entregado don Federico Aymat, obligándome a pasarle carta de pago en el último plazo según convenio. Arruego de don José Justiniano Bázquez por no saber.—Federico Aymat.—Febrero, 7, 1888.' Como puede verse este documento no expresa la causa del pago de la cantidad a que se refiere ni tampoco lo ha declarado ningún testigo por lo que no tiene valor probatorio alguno, y además es un documento en el cual un mismo individuo, Federico Aymat, firma a ruego del acreedor José Justiniano Vázquez, para recibir una suma del deudor Agustín Planell que le había entregado el propio Federico Aymat, esto es en otras palabras, un recibo en el que una misma persona, Federico Aymat, se convierte en agente o mandatario del deudor para entregar el importe de la deuda al acreedor, y por no saber firmar éste, se otorga a sí mismo carta de pago de un dinero que él mismo entrega.

"El demandante también presentó como prueba una planilla sobre valuación de propiedad a los efectos contributivos suscrita y jurada por José Justiniano Vázquez el 25 de marzo de 1901, para demostrar la no existencia de la deuda en esa fecha, por no haberla declarado en ella el acreedor. La ley de contribuciones que entonces regía es la aprobada por la Asamblea Legislativa de Puerto Rico, en 31 de enero de 1901, que se conoció generalmente con el nombre de Ley Hollander. Por virtud de dicha ley, sección 3 (M) las hipotecas sin interés estaban exentas de la imposición de contribuciones. En la escritura de venta e hipoteca otorgada por Vázquez a favor de Planell no se hace constar que el crédito devengara intereses, por lo que la corte entiende que no era necesario que la incluyera en la declaración. Además, como la Ley Hollander no está actualmente en vigor, el impedimento de cobro, si es que alguno hubiera existido, ha cesado.

"En cuanto a la escritura de hipoteca de mayo 28, 1900, otorgada por Agustín Planell y Ruiz, en la que expresa que la finca no reporta carga ni gravamen alguno, se refiere, según aparece en la misma escritura, a la participación de Francisco Serra Castañer que había sido satisfecha por la escritura de carta de pago de agosto 25 de 1894. Además, esa manifestación sería una en interés propio, hecho por una parte, que no podía tener efecto probatorio alguno.

"Es de notarse en este caso que al satisfacer Agustín Planell a Francisco Serra Castañer el importe de su participación en el año 1894, éste le otorgara carta de pago mientras que no ha sucedido así en cuanto se refiere a la del aquí demandado José Justiniano

Vázquez, que es anterior a la de Serra Castañer. Si en el año 1891 quedó pagada la deuda de Justiniano, ¿por qué no exigírsele la carta de pago como se hizo en el 94 con el otro acreedor Serra Castañer?

"Se dice por el demandante que en un asalto a mano armada de que fué víctima el deudor Agustín Planell, desaparecieron todos los recibos y documentos que éste tenía en su poder, pero no hay prueba que demuestre que entre esos papeles se encontraran especialmente los recibos que se alegan haberse otorgado por el demandado. No obstante la alegada pérdida o desaparición de los documentos, el demandante presenta el primer recibo que se dice otorgara el acreedor, o sea el demandado el 7 de febrero de 1888, y esta contradicción en la prueba del demandante no ha sido aclarada por él.

"Pasemos ahora a la segunda cuestión, o sea si la acción está prescrita.

"La ley que rige el caso es el artículo 142 de la Ley Hipotecaria promulgada en Puerto Rico el 1 de mayo de 1880, que corresponde al artículo 134 de la vigente que comenzó a regir el 29 de agosto de 1893, y que dispone que 'la acción hipotecaria prescribirá a los veinte años, contados desde que pueda ejercitarse con arreglo al título inscrito.'

"Las características de toda hipoteca son: 1, indivisibilidad; 2, inseparabilidad y 3, extensión. La primera de ésta es la que vamos a tratar en relación con este caso. Entiende la corte que la hipoteca que se discute es indivisible, porque ella ha de subsistir íntegra mientras no se cancele sobre la totalidad de la finca hipotecada, y porque la circunstancia de que hubiera dos distintos acreedores no constituye tal división, según reza el artículo 1761 del Código Civil Revisado, que corresponde al artículo 1860 del antiguo Código Civil.

"Pero aparte de tal cuestión surge de si el acreedor demandado, estaba en condiciones de ejercitar su derecho al vencimiento de cualquiera de sus plazos, o si lo estuvo en el 1894 en que Serra Castañer otorgó carta de pago de los plazos que a él se adeudaban, o si finalmente tal estado de cosas quedaba establecido en el año 1901, fecha en que, según reza la escritura de hipoteca, vencía el último plazo, y en el cual año debía cancelarse totalmente la hipoteca. La circunstancia de que un deudor cuando hubiere varios acreedores asegurados con una sola hipoteca a satisfacer en plazos con distintos vencimientos, opte por pagar a determinado acreedor, jamás podría alterar los términos originales del contrato entre los cuales estaría el término hábil para cobrar. Las ventajas que pudiera ofre-

cer tal acreedor podrían ser un incentivo para que el deudor optara por pagarle a él antes que a otro, cuyo plazo tuviera anterior vencimiento, pero ello no podría afectar el término desde el cual habría que contarse la prescripción.

"Atendidos los términos en que aparece redactada la escritura de hipoteca, la corte estima que las partes no tuvieron la intención de que se instituyera acción alguna o procedimiento hipotecario hasta que la cantidad total adeudada estuviera vencida, en otras palabras, hasta que hubiera pasado la época fijada para el pago del último plazo que vencía en 1901. Véase *Sucesión Firpo* v. *Sucesión Pino et al.*, 14 D. P. R. 105.

"Por otra parte, en el supuesto de que la prescripción no empezara a contarse desde 1901, y sí desde la fecha en que alega el demandante, entiende la corte que el mero transcurso del término legal no da lugar a la prescripción, pues es necesario alegar y probar que este término no ha sido interrumpido. Este hecho no se ha demostrado por el demandante; en cambio el demandado ha presentado prueba tendente a demostrar las gestiones de cobro hechas por él a Agustín Planell, sin que lograra hacer efectivo el crédito. Y se desprende también de tal evidencia que esas gestiones fueron hechas en término hábil para paralizar la prescripción.

"Independientemente de todas estas disposiciones de hecho y de derecho, la corte estima que la prueba es contradictoria en sentido general, pero considerando las circunstancias que aquí han ocurrido y la manera de declarar los testigos, resuelve la discrepancia en beneficio del demandado."

Aparte de la mera estipulación de que el comprador percibiría un recibo privado por cada pago parcial que se hiciera hasta verificar el último en que le sería otorgada la correspondiente carta de pago y cancelación, en la escritura e hipoteca no encontramos ninguna prueba de la intención de que no debían instituirse los procedimientos hipotecarios con anterioridad a la fecha del vencimiento del último plazo. Ni suministra tampoco ninguna nueva luz sobre la cuestión el alegato de la parte apelada. La opinión en el caso de Firpo no sostiene necesariamente la proposición que ha sido enunciada por el juez sentenciador. Pero para los fines de esta opinión puede admitirse, sin resolverse, que

el mero lapso de tiempo no impide el ejercicio de una acción y que en el presente caso no había transcurrido el término fijado por la ley.

Sin embargo, de un cuidadoso examen de toda la prueba estamos convencidos más allá de una duda razonable de que los plazos cuya ejecución se intentó fueron satisfechos en la forma en que se ha alegado en la demanda. Una completa repetición y análisis de toda la prueba no tendría fin práctico alguno.

Aymat, que fué quien firmó el recibo por el primer plazo, era un hombre de negocios y responsabilidad y relativamente de grandes recursos y buena reputación. Era cuñado del demandado en este pleito, con quien también tuvo relaciones comerciales. En la fecha del juicio tanto Aymat como Planell ya habían fallecido hacía unos diez años. La manifestación que hizo Aymat de que él firmó el recibo a instancia del cuñado no estaba, por consiguiente, sujeta al interrogatorio de repreguntas.

Esto es igualmente cierto, sin embargo, en cuanto a la manifestación que se admitió como que hubiera sido hecha por el demandado de habérsele llamado a declarar, para probar que él nunca autorizó el recibo. La diferencia estriba en la circunstancia de que el demandado no estaba cohibido de poder hablar y a excepción de la manifestación que hizo su abogado de no haber sido posible citarlo, no se trató de explicar su falta en comparecer personalmente.

Agapito Guzmán, socio anterior en el negocio del demandado, hizo una negociación con el pago de los dos últimos plazos hipotecarios debidos al demandado a instancia de dicho demandado que necesitaba dinero. Un descuento de $25 sobre el segundo de estos dos plazos fué la consideración que medió para su pago por adelantado. Alemañy adelantó el dinero que se necesitaba para aprovecharse de esta oferta.

Guzmán y un hijo de Planell, ambos declararon respecto al pago de estos dos plazos por Alemañy o a presencia de Alemañy y de un tal Dupont, que preparó el recibo.

Guzmán, el anterior socio del demandado en el negocio, era entonces el comisario del barrio. Ni Alemañy ni Dupont fueron llamados por el demandado no habiéndose demostrado tampoco de algún modo que sus testimonios no podían obtenerse. No se hizo ningún esfuerzo por impugnar o desacreditar a ninguno de los testigos del demandante.

La investigación oficial practicada al día siguiente del asalto nocturno a la morada de Planell en el año 1898, no deja lugar a duda alguna en cuanto al hecho del ataque. Planell, que había sido golpeado gravemente y a quien le arrancaron la barba, fué entrevistado ese día en casa de Antonio Alemañy a la cual había sido trasladado y se quejó a las autoridades de la pérdida de todos sus documentos incluso los recibos de pago de los plazos de la hipoteca. Una caja llena de documentos había sido sacada de la casa y dichos documentos estaban dispersos por las plantaciones de café vecinas. Se informó a Planell del hecho a que acabamos de referirnos y se le aconsejó que hiciera todo lo posible por recuperar estos documentos. Este incidente tuvo lugar en noviembre durante un período de fuertes lluvias.

Dentro de las circunstancias apenas si parece razonable el exigir al demandante que diez años después del fallecimiento de Planell produjera testigos oculares para declarar más o menos que los recibos que se echaban de menos estaban con los documentos perdidos y que el recibo ofrecido como prueba, que en sí era un documento de más de 30 años y de procedencia autorizada, se encontraba entre los documentos recuperados.

*Non constat* que Planell hubiera jamás constituído ninguna hipoteca que no fueran las dos de que hace mención el

juez sentenciador, *supra,* o que él alguna vez debió al de-
mandado en este pleito alguna suma de dinero con excep-
ción de los pagos aplazados que forman parte del precio de
venta de las veinticinco cuerdas de terreno envueltas en la
presente controversia.

Podemos de paso agregar, ahora como después, que no
existe ningún principio de evidencia que excluya como ta-
les "las declaraciones para beneficio propio." La cuestión
relativa a tales manifestaciones es siempre si están o no
comprendidas dentro de alguna de las bien reconocidas ex-
cepciones a la regla sobre prueba de referencia. Y sin ir
más lejos en este aspecto de la cuestión de prueba, será
bastante con decir que, suponiendo que el hecho del pago
haya quedado establecido suficientemente, como lo fué por
otra prueba, la manifestación que hizo Planell en la hipo-
teca posterior de que la propiedad estaba libre de gravá-
menes, por lo menos era una circunstancia corroborante sig-
nificativa de la declaración hecha por el hijo al efecto de
que Planell entendió el documento otorgado por Francisco
Serra Castañer en el año 1894, era todo lo que se necesi-
taba para la cancelación. Semejante interpretación dada
por una persona que no estaba familiarizada con asuntos le-
gales, de la fraseología más bien ambigua en que estaba re-
dactada la escritura original e hipoteca, es enteramente
plausible si no probable, y sirve de razonable explicación
del hecho de no exigirse una cancelación semejante al de-
mandado en este pleito.

Por otra parte, será bastante con hacer un examen cui-
dadoso de la ley de 1901, sin más razonamiento, para que se
vea que no está sujeta a la interpretación que le ha dado la
corte inferior. La hipoteca en cuestión no estaba exenta.

Ni tenemos tampoco que ver con el efecto de la deroga-
ción de la pena impuesta por el estatuto para que cese el
impedimento para el cobro.

La cuestión envuelta en la omisión en presentar la hipo-

teca para las contribuciones es que, en ausencia de explicación, se nos deja que elijamos entre la inferencia de que había sido satisfecha la hipoteca y la conclusión alternativa de que no habiéndose satisfecho, el acreedor hipotecario, sin ninguna razón para anticipar una posible rehabilitación por medio de una futura derogación de la ley, optó por perder todo o cualquier remedio o esperanza de obtener reparación por alguna corte de justicia caso de una falta de pago continuada.

El demandado, según ya hemos indicado, no compareció al juicio. La contestación no estaba jurada por él, sino por su abogado.

El testimonio creditivo de admisiones más recientes y contestaciones evasivas a las preguntas propuestas por el hijo de Planell a presencia de un notario que luego compa* ció como abogado del demandante en este caso, no fué contradicho.

A fin de evitar una suspensión, el demandante admitió en el juicio que de estar presente el demandado declararía que a él nunca se le pagó ni autorizó el recibo dado por Aymat.

La prueba a que se refiere el juez sentenciador como tendente a probar un requerimiento de pago con anterioridad al fallecimiento de Planell fué extremadamente vaga y poco satisfactoria. Además, dicha prueba fué más que desvirtuada por otra prueba de refutación. Pero aun no siendo así nos sentiríamos inclinados a declarar que el demandante tenía derecho a que se le explicara de algún modo por qué el demandado, a pesar de su mala situación económica, debía estar satisfecho con un requerimiento de pago hecho de palabra anualmente durante todo el período de tiempo comprendido en los ocho o diez años al cual siguió un intervalo que comprende otra década que siguió al fallecimiento de su deudor antes de establecerse los procedimientos hipotecarios.

A falta de tal explicación la única conclusión lógica es que los procedimientos que se intentaron anular por el demandante en este caso fueron consecuencia de un pensamiento posterior, movido tal vez por la ejecución y venta de la propiedad a virtud de la hipoteca subsiguiente.

En vista de tal abrumadora preponderancia de prueba no es bastante con hacer una referencia de paso a un conflicto de poca importancia y al comportamiento de los testigos en la silla testifical para que se sostenga la sentencia apelada.

Debe revocarse dicha sentencia.

*Revocada la sentencia apelada, sin costas.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Franco Soto no intervino en la resolución de este caso.